**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| **KNR, INC.,** | ) | **CASE NO.1:14CV818** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **COPART, INC., ET AL.,** | ) | **OPINION AND ORDER** |
| | ) | |
| **Defendants.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

      This matter comes before the Court on Defendant Workers' Credit Union's combined
Motion for Relief from Default Judgment pursuant to Federal Rule of Civil Procedure
60(b)(4) and Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rule of
Civil Procedure 12(b)(2), or in the alternative, Motion for Relief from Default Judgment due
to "Excusable Neglect" pursuant to Federal Rule of Civil Procedure 60(b)(1) and/or 60(b)(6).
(Doc. #26).  For the following reasons, the Court grants Defendant's Motion for Relief from
Default Judgment and Motion to Dismiss for Lack of Personal Jurisdiction.

**Facts and Procedural History**

      Plaintiff KNR, Inc. ("KNR) is an Ohio corporation with its principal place of business
in Wellington, Ohio.  Defendant Workers' Credit Union is a Massachusetts-chartered credit

union with its principal place of business in Fitchburg, Massachusetts.

KNR purchased a 2008 Chevrolet Trailblazer for $4900 on January 24, 2014, from Defendant Metro One, Inc. ("Metro One") through an auction website operated by Defendant Copart.  KNR traces title on the Trailblazer to Nicholas Bouton, who purchased the Trailblazer from an unknown seller on January 23, 2012.  Workers' Credit Union held a lien on the Trailblazer and repossessed the vehicle on or around September 26, 2013, after Bouton defaulted on his loan.  Workers' Credit Union released its lien on the Trailblazer on or around December 2, 2013 and sold the vehicle through auction to Defendant Metropolitan Auto, Inc. ("Metropolitan Auto").  Metropolitan Auto sold the Trailblazer to Metro One on or around December 28, 2013.  Metro One subsequently sold the Trailblazer to KNR through Copart's auction website.

KNR alleges that the Trailblazer's odometer read 46,492 miles at the time KNR received the vehicle from Metro One after the January 24, 2014 sale.  A copy of Bouton's certificate of title to the Trailblazer, issued on February 10, 2012, lists an actual mileage odometer reading of 115,945 miles.   KNR therefore alleges that, beginning at the time Workers' Credit Union repossessed the vehicle from Bouton, the multiple Defendants conspired to violate both federal and Ohio laws and to defraud KNR by altering the Trailblazer's odometer reading and misrepresenting the vehicle's actual mileage to KNR.

On April 16, 2014, KNR filed a Complaint against Workers' Credit Union, Metropolitan Auto, Metro One and Copart collectively in the U.S. District Court for the Northern District of Ohio.  KNR alleged that the Defendants: **(I)** violated 49 U.S.C. § 32703 by conspiring to alter and by altering the Trailblazer's odometer reading with the intent to

defraud KNR, causing injury to KNR; **(II)** violated 49 U.S.C. § 32705 by failing to disclose to KNR that there was a discrepancy between the Trailblazer's odometer reading and actual miles traveled, causing injury to KNR; **(III)** violated O.R.C. § 4549.43 by altering the Trailblazer's odometer reading with the intent to defraud KNR, causing injury to KNR; **(IV)** violated O.R.C. § 4549.45 by failing to disclose knowledge of tampering with the Trailblazer's odometer reading to KNR, causing injury to KNR; **(V)** committed fraud by knowingly making false representations to KNR about the Trailblazer's mileage to induce KNR to purchase the vehicle; and **(VI)** committed civil conspiracy by conspiring together to defraud KNR by altering and misrepresenting the Trailblazer's actual mileage with the intent to deceive and defraud KNR.

A summons was issued for Workers' Credit Union on May 14, 2014 and was served by certified mail on Workers' Credit Union on May 15, 2014. Return of service was entered on May 21, 2014. Thomas Gibbons, Esq., a Workers' Credit Union representative, and Bradley Barmen, counsel for KNR, exchanged telephone and email communications between April 18, 2014 and May 13, 2014. Workers' Credit Union alleges that Barmen assured Gibbons that he would not file a motion for default judgment while the parties were cooperatively exchanging information. KNR disputes Gibbons' interpretation of Barmen's communications. Workers' Credit Union did not file an answer to KNR's Complaint. KNR filed a Motion for Default Judgment on July 2, 2014. The Court filed an order granting KNR's Motion for Default Judgment on August 14, 2014.

Workers' Credit Union filed a combined Motion for Relief from Default Judgment on September 16, 2014. Workers' Credit Union argues that the default judgment is void for lack

3

of personal jurisdiction and that relief should be granted pursuant to Federal Rule of Civil Procedure 60(b)(4).  Workers' Credit Union further argues that KNR's Complaint should be dismissed for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  Alternatively, Workers' Credit Union argues that the default judgment should be vacated pursuant to Federal Rule of Civil Procedure 60(b)(1) as Workers' Credit Union's failure to answer KNR's Complaint was a result of excusable neglect and/or a result of other reasons justifying relief under Federal Rule of Civil Procedure 60(b)(6).

## Law and Analysis

### Void Judgments under FRCP Rule 60(b)(4)

A void judgment is grounds for relief from a final judgment if a party makes a motion under the rule within a reasonable time.  Fed. R. Civ. P. 60(b)(4).  A court must have personal jurisdiction over a defendant to enter a valid default judgment against that defendant.  *Citizens Bank v. Parnes*, 376 F. App'x 496, 501 (6th Cir. 2010).  If a court enters a judgment against a defendant over whom it does not have personal jurisdiction, the judgment is void and must be set aside.  *Hughes v. Cabanas del Caribe Hotel*, 744 F. Supp. 788, 794 (E.D. Mich. 1990) aff'd, 947 F.2d 945 (6th Cir. 1991).  A party does not waive the defense of lack of personal jurisdiction by failing to appear or respond to a complaint before the entry of default judgment and can challenge the validity of a default judgment on personal jurisdiction grounds.  *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1120-21 (6th Cir. 1994).  Therefore, if the Court did not have personal jurisdiction over Workers' Credit Union when it entered the default judgment, the Court must vacate the judgment against Workers' Credit Union.

4

## Motion to Dismiss under FRCP Rule 12(b)(2)

Workers' Credit Union additionally moves for dismissal of KNR's Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  As both motions require the Court to make a personal jurisdiction determination, they are considered together.

When a court approaches a motion to dismiss for lack of personal jurisdiction based solely on written materials and affidavits, "the burden on the plaintiff is relatively slight, […] and the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal [] […]."  *Ampco System Parking v. Imperial Parking Canada Corp.*, No. 1:11CV1172, 2012WL1066784, at *2 (N.D. Ohio Mar. 28, 2012) (quoting *Air Prods. & Controls, Inc., v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007).  The court "does not weigh the controverting assertions of the party seeking dismissal." *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cr. 1998).  Plaintiff need only establish jurisdictional claims with "reasonable particularity" and the pleadings and affidavits are construed in the light most favorable to the plaintiff.  *Ampco*, 2012WL1066784, at *2.  The burden is on the plaintiff, however, to establish that jurisdiction exists, and the plaintiff may not merely stand on his pleadings in the face of a properly supported motion for dismissal. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).  The plaintiff must set forth specific facts showing that the court has jurisdiction.  *Id.*  Therefore, dismissal is proper only if all the specific facts which the plaintiff alleges collectively fail to state a prima facie case for jurisdiction.  *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

**Personal Jurisdiction**

To determine whether personal jurisdiction may be exercised, the Court applies Ohio law and uses a two-step analysis. *Sterling Jewelers, Inc. v. M & G Jewelers, Inc.*, No. 5:14CV2030, 2015 WL 545778 (N.D. Ohio Feb. 10, 2015). First, the Court determines whether Ohio's long-arm statute confers personal jurisdiction. *Id.* If the Court determines that the long-arm statute confers personal jurisdiction, it then determines whether exercising jurisdiction over the Defendant would deprive the Defendant of the right to due process of law pursuant to the Fourteenth Amendment to the United States Constitution. *Id.*

**Ohio Long-Arm Statute**

KNR asserts that jurisdiction over Workers' Credit Union is proper in Ohio because Workers' Credit Union's satisfies section (A)(6) of the long-arm statute.  Ohio's long-arm statute provides, in relevant part:

> A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's: […] (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state.

O.R.C. § 2307.382.

To satisfy the requirements of this section of the long-arm statute, a plaintiff must allege facts that establish each of the section's three subparts: 1) a tortious injury, 2) an act committed with the purpose of causing injury, and 3) a reasonable expectation that a person would be injured in Ohio. *Haley v. City of Akron*, No. 5:13-CV-00232, 2014 WL 804761, at *10 (N.D. Ohio Feb. 27, 2014).

KNR alleges that during transfer of the vehicle title from Workers' Credit Union to

6

Metropolitan Auto, Workers' Credit Union replaced a "1" with a "0" on the odometer reading, resulting in the Trailblazer mileage being reported as 48,134 rather than 148,134. KNR further alleges that Workers' Credit Union "knew that it was selling a vehicle with an incorrect odometer disclosure to Metropolitan Auto with the understanding that Metropolitan Auto would be selling the vehicle to another consumer."  (Doc. #27, Page ID #207-208). These allegations form the basis for KNR's claim that Worker's Credit Union engaged in fraud and conspiracy to cause injury by altering the Trailblazer's odometer and failing to disclose knowledge of the alterations.  KNR also argues that Workers' Credit Union could reasonably expect that Metropolitan Auto, an automobile retailer, would re-sell the Trailblazer to a third party in Ohio, thereby causing injury in Ohio.

Workers' Credit Union denies any involvement in the alleged conspiracy to alter the Trailblazer's odometer reading and denies making any false representations about the Trailblazer's mileage during the title transfer to Metropolitan Auto.  Workers' Credit Union offered a copy of the Federal/State Odometer Disclosure Statement it provided to Metropolitan Auto upon sale of the Trailblazer at auction in New Hampshire as evidence that Workers' Credit Union correctly listed the odometer reading as 148,134 miles.  (Doc. #26-2, Page ID #190).  Workers' Credit Union denies that it changed a "1" to a "0" on the title transfer to Metropolitan Auto as alleged by KNR, and provided a copy of the Certificate of Title transfer as evidence.  (Doc #31-2).  Workers' Credit Union also argues that it did not have any reasonable expectation that its sale of the Trailblazer, at a New Hampshire auction to a purchaser located in Newark, Delaware, would cause injury to a person in Ohio.  (Doc. #26-2, Page ID #186).

7

The facts set forth by KNR in regards to Workers' Credit Union's involvement in the alleged alterations of the Trailblazers' odometer reading are meager.  Workers' Credit Union provided evidence in the form of the Federal/State Odometer Disclosure Statement and the title transfer certificate, demonstrating that it transferred title on the Trailblazer with accurate reporting of the odometer reading.  However, the facts alleged must be viewed in the light most favorable to the plaintiff in addressing a motion to dismiss for lack of personal jurisdiction.  *Ampco*, 2012WL1066784, at *2.

There is a factual dispute between the parties over whether a "1" was changed to a "0" on the title transfer certificate at the time of Workers' Credit Union's transfer of title to Metropolitan Auto.  In light of this factual dispute and construing the evidence in KNR's favor, KNR alleged facts of sufficient particularity to establish the first two subparts of O.R.C § 2307.382(A)(6); namely,  that Workers' Credit Union intentionally caused tortious injury to a person in Ohio by an act outside of Ohio.

O.R.C. § 2307.382(A)(6) also requires that a defendant have reasonably expected that a person would be injured in the state of Ohio by the defendant's tortious action.  KNR attempts to satisfy this requirement by arguing that Workers' Credit Union sold the Trailblazer to Metropolitan Auto with the understanding that Metropolitan Auto would re-sell the vehicle to another consumer.  Therefore, Workers' Credit Union could reasonably assume that the Trailblazer would eventually be purchased by and cause injury to a person in Ohio.

KNR does not allege that Workers' Credit Union had any direct contacts with the state of Ohio or persons residing in Ohio, either it its normal course of business or through transactions involving the Trailblazer.  KNR alleges only that Workers' Credit Union was a

8

party to a chain of title transfers involving the Trailblazer.  Workers' Credit Union sold the vehicle at auction to Metropolitan Auto, a Delaware corporation.  Metropolitan Auto then transferred title to the vehicle to Metro One, also a Delaware corporation.  Metro One finally sold the Trailblazer to KNR through an auction website run by Copart, a Texas corporation. This fact pattern does not establish any evidence indicating that Workers' Credit Union had reason to believe that its sale of the Trailblazer to Metropolitan Auto would cause injury to a person in Ohio.

Further, the Sixth Circuit has held that the exercise of personal jurisdiction under Ohio's long-arm statute must be based on a cause of action arising from the *defendant's* contacts with the state. *Brunner v. Hampson*, 441 F.3d 457, 464 (6th Cir. 2006) (emphasis added).  *See also*, *Microsys Computing, Inc. v. Dynamic Data Sys., LLC*, No. 4:05 CV 2205, 2006 WL 2225821, at *9 (N.D. Ohio Aug. 2, 2006) (Plaintiff unable to justify personal jurisdiction over defendant where plaintiff failed to establish that its conspiracy and unjust enrichment claims arose from defendant's contacts with Ohio).  As noted, KNR does not allege that Workers' Credit Union had any contacts with Ohio.  Therefore, the facts alleged by KNR do not justify the Court's exercise of personal jurisdiction over Workers' Credit Union under Ohio's long-arm statute.

### Due Process

Even if KNR's factual allegations were sufficient to justify the Court's exercise of personal jurisdiction over Workers' Credit Union under the Ohio long-arm statute, the allegations fail to satisfy the Sixth Circuit's three-part test for determining whether the exercise of specific jurisdiction comports with due process requirements:

9

> First, the defendant must purposely avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities here. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Kerry Steel, Inc. v. Paragon Indus.*, 106 F.3d 147, 150 (6th Cir. 1997) (quoting *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

In order to satisfy the "purposeful availment" prong of the analysis, a defendant must have more than "random, fortuitous, and attenuated contacts" with the forum statue. *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 432 (6th Cir. 2006).  A corporation may purposefully avail itself of the privilege of acting in a forum state where it deliberately directs sales of its products to the forum state.  *Zoya Co. v. NIOS, Inc.*, No. 1:13-CV-00780-DCN, 2013 WL 4511922, at *4 (N.D. Ohio Aug. 23, 2013).  However, the Supreme Court has recently clarified that "the plaintiff cannot be the only link between the defendant and the forum.  Rather, it is the defendant's conduct that must for the basis for its jurisdiction over them."  *Walden v. Fiore*, 134 S. Ct. 1115, 1123 (2014).  Further, "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id*.

In this case, KNR does not allege that Workers' Credit Union had any contacts with the State of Ohio.  KNR does not allege that Workers' Credit Union purposefully directed the sale of the Trailblazer to Ohio.  Rather, KNR alleges only that Workers' Credit Union formed part of a chain of title transfers that eventually led to the purchase of the Trailblazer by KNR, an Ohio corporation.  The only alleged connection between Workers' Credit Union and Ohio is Workers' Credit Union's prior ownership of title to a vehicle that was later sold to an Ohio-

10

based plaintiff, by a Delaware-based third party, through a Texas-based corporation's website.  Under these facts, Workers' Credit Union does not have anything more than a random connection to Ohio as a result of a chain of title transfers on a vehicle.  This random connection between Workers' Credit Union and Ohio does not satisfy the purposeful availment prong of the Sixth Circuit's due process test and exercising personal jurisdiction over Workers' Credit Union in Ohio would violate Workers' Credit Union's due process rights under the Fourteenth Amendment.  Because KNR failed to allege facts satisfying the first prong of the Sixth Circuit's due process test, it is unnecessary to consider the second and third prongs of the test.

Defendant Workers' Credit Union's Motion for Relief from Default Judgment under Federal Rule of Procedure 60(b)(4) and Motion to Dismiss under Federal Rule of Procedure 12(b)(2) are granted as the Court does not have personal jurisdiction over Defendant. Defendant's alternative motions for relief from default judgment were not considered as the claims against Defendant are dismissed on personal jurisdiction grounds.

IT IS SO ORDERED.

s/ Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge

Dated:  June 4, 2015

11